**EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

------------------------------------------------------------------X

M.B.,

        Plaintiff,

       -against-

CHURCH OF ST. AIDAN; ST. AIDAN SCHOOL;
FRANCISCAN BROTHERS, INC. a/k/a FRANCISCAN
BROTHERS OF BROOKLYN a/k/a CONGREGATION
OF THE RELIGIOUS BROTHERS OF THE THIRD
ORDER REGULAR OF ST. FRANCIS; and SISTERS
OF CHARITY OF HALIFAX NOVA SCOTIA,

        Defendant.

------------------------------------------------------------------X

Index No._____

**SUMMONS**

To the above-named Defendants:

CHURCH OF ST. AIDAN, 505 Willis Avenue Williston Park New York 11596

ST. AIDAN SCHOOL, 510 Willis Ave Williston Park New York 11596

FRANCISCAN BROTHERS, INC. a/k/a FRANCISCAN BROTHERS OF BROOKLYN a/k/a
CONGREGATION OF THE RELIGIOUS BROTHERS OF THE THIRD ORDER REGULAR
OF ST. FRANCIS, 135 Remsen Street, Brooklyn, New York 11201

SISTERS OF CHARITY OF HALIFAX NOVA SCOTIA, 215 Seton Rd., Halifax, NS B3M 0C9

      You are hereby summoned to answer the complaint in this action and to serve a copy of
your answer, or, if the complaint is not served with this summons, to serve a notice of appearance,
on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day
of service (or within 30 days after the service is complete if this summons is not personally
delivered to you within the State of New York); and in case of your failure to appear or answer,
judgment will be taken against you by default for the relief demanded in the complaint.

      The basis of venue is the principal place of business of the Defendant(s).

Dated: New York, NY
      August 4, 2021

                           HERMAN LAW

                     By:   *Jeffrey Herman*
                           Jeff Herman, Esq.
                           434 W. 33rd Street, Penthouse
                           New York, NY 10001
                           (212) 390-0100

Case 2:23-cv-05168   Document 1-2   Filed 07/06/23   Page 3 of 24 PageID #: 11

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------------X
M.B.,

                                 Plaintiff,                   **COMPLAINT**

     -against-

                                                       Index No._____
CHURCH OF ST. AIDAN; ST. AIDAN SCHOOL;
FRANCISCAN BROTHERS, INC. a/k/a FRANCISCAN
BROTHERS OF BROOKLYN a/k/a CONGREGATION
OF THE RELIGIOUS BROTHERS OF THE THIRD
ORDER REGULAR OF ST. FRANCIS; and SISTERS OF
CHARITY OF HALIFAX NOVA SCOTIA,

                                  Defendants.
-------------------------------------------------------------------X
TO THE SUPREME COURT OF THE STATE OF NEW YORK:

       Plaintiff, M.B., by and through undersigned counsel, respectfully shows to this Court and

alleges as follows:

## INTRODUCTION

      1.     This is a revival action brought pursuant to the New York Child Victims Act, CPLR

§ 214-g. As a minor, the Plaintiff was sexually abused and assaulted by a clergyman.

## PARTIES, JURISDICTION AND VENUE

      2.     Plaintiff, M.B., is a citizen and resident of the State of New York. Plaintiff brings

this Complaint using a pseudonym because of the sensitive nature of the allegations of child sexual

abuse in the Complaint, which is a matter of the utmost intimacy. Plaintiff fears embarrassment

and further psychological damage if Plaintiff's identity as a victim of child sexual abuse were to

become publicly known.

      3.     Defendant, CHURCH OF ST. AIDAN (hereinafter "CHURCH"), is a Roman

Catholic parish and church operating under the authority and control of the DIOCESE OF

Case 2:23-cv-05168 Document 1-2 Filed 07/06/23 Page 4 of 24 PageID #: 12

ROCKVILLE CENTRE, with a principal place of business located at 505 Willis Avenue Williston Park New York 11596. CHURCH is a citizen and a resident of the State of New York.

4. Defendant, ST. AIDAN SCHOOL (hereinafter, "SCHOOL"), is a Roman Catholic parochial school operating under the authority and control of the DIOCESE OF ROCKVILLE CENTRE, with a principal place of business located at 510 Willis Ave Williston Park New York 11596. At all times relevant and material hereto, SCHOOL was owned, operated, maintained, and/or controlled by CHURCH. SCHOOL is a citizen and resident of the State of New York.

5. Defendant, FRANCISCAN BROTHERS, INC. a/k/a FRANCISCAN BROTHERS OF BROOKLYN a/k/a CONGREGATION OF THE RELIGIOUS BROTHERS OF THE THIRD ORDER REGULAR OF ST. FRANCIS, (hereinafter, "FRANCISCAN BROTHERS ORDER"), is a Catholic religious order operating within the territory and under the authority of DIOCESE OF ROCKVILLE CENTRE with their principal location at 135 Remsen Street, Brooklyn, New York 11201. FRANCISCAN BROTHERS ORDER is a citizen and resident of New York.

6. Defendant, SISTERS OF CHARITY OF HALIFAX NOVA SCOTIA, (hereinafter, "SISTERS OF CHARITY ORDER"), is a Catholic religious order operating within the territory and under the authority of DIOCESE OF ROCKVILLE CENTRE with their principal location at 215 Seton Rd., Halifax, NS B3M 0C9. SISTERS OF CHARITY ORDER is a citizen and resident of Canada (FRANCISCAN BROTHERS ORDER and SISTERS OF CHARITY ORDER hereinafter collectively referred to as "ORDERS").

7. At all times relevant and material hereto, CHURCH and SCHOOL were wholly or partially owned, operated, controlled, managed, and/or staffed by ORDERS.

8. At all times relevant and material hereto, BROTHER AQUINOS (hereinafter "PERPETRATOR") was a duly ordained Catholic clergyman under the supervision and control of

2

Case 2:23-cv-05168 Document 1-2 Filed 07/06/23 Page 5 of 24 PageID #: 13

the FRANCISCAN BROTHERS ORDER and DIOCESE OF ROCKVILLE CENTRE, assigned to the CHURCH and the SCHOOL.

9.      This Court has subject matter jurisdiction of this action pursuant to Article VI of the New York Constitution.

10.     Personal jurisdiction lies over Defendants as they are present and domiciled in the State of New York and/or transacts business within the State of New York and/or regularly solicits business in the state of New York and/or otherwise falls within the jurisdiction of the Court pursuant to CPLR § 302.

11.     Venue of this action lies in Nassau County as a substantial part of the events or omissions giving rise to the claim occurred in Nassau County and/or one or more of the Defendants resides in Nassau County.

12.     The amount in controversy exceeds the jurisdictional limit of all lower courts.

## DUTY

### Defendant CHURCH

13.     At all times relevant and material hereto, the DIOCESE OF ROCKVILLE CENTRE, as principal, and CHURCH, as agent, were in an agency relationship, such that CHURCH acted on the DIOCESE OF ROCKVILLE CENTRE's behalf, in accordance with the DIOCESE OF ROCKVILLE CENTRE's instructions and directions on all matters, including those relating to the hiring, retention and supervision of personnel. The acts and omissions of CHURCH were subject to DIOCESE OF ROCKVILLE CENTRE's plenary control, and CHURCH consented to act subject to the DIOCESE OF ROCKVILLE CENTRE's control.

14.     At all times relevant and material hereto, the CHURCH, as principal, and SCHOOL, as agent, were in an agency relationship, such that SCHOOL acted on the CHURCH's

Case 2:23-cv-05168   Document 1-2   Filed 07/06/23   Page 6 of 24 PageID #: 14

behalf, in accordance with the CHURCH's instructions and directions on all matters, including those relating to the hiring, retention and supervision of personnel. The acts and omissions of SCHOOL were subject to the CHURCH's plenary control, and SCHOOL consented to act subject to the CHURCH's control.

15.     At all times relevant and material hereto, the CHURCH and Plaintiff were in a special relationship of parochial school – student, in which the CHURCH owed Plaintiff a duty of reasonable care to prevent foreseeable harm.

16.     At all times relevant and material hereto, the CHURCH had a duty to act as a reasonably prudent parent would to protect Plaintiff from foreseeable harms on CHURCH and SCHOOL grounds and during church- and school-related activities. In this regard, the CHURCH was in loco parentis with parochial school students, including Plaintiff.

17.     At all times relevant and material hereto, the CHURCH and PERPETRATOR were in a special relationship of employer-employee, in which the CHURCH owed a duty to control the acts and conduct of PERPETRATOR to prevent foreseeable harm.

18.     At all times relevant and material hereto, the CHURCH had a duty to exercise reasonable care in the training of teachers, clergy, employees, and staff in the prevention of sexual abuse and protection of the safety of students and children in its care.

19.     At all times relevant and material hereto, the CHURCH had a duty to establish and implement policies and procedures in the exercise of reasonable care for the prevention of sexual abuse and protection of the safety of the parochial students and children in its care.

20.     At all times relevant and material hereto, the CHURCH had a duty to warn parishioners of dangers presented to children on school grounds and in engaging in school-related activities, including the dangers of sexual abuse.

4

Case 2:23-cv-05168   Document 1-2   Filed 07/06/23   Page 7 of 24 PageID #: 15

21.     At all times relevant and material hereto, the CHURCH owed a duty to Plaintiff to use reasonable care to protect the safety, care, well-being, and health of Plaintiff while Plaintiff was under the care and custody, and/or in the presence of the CHURCH.

22.     At all times relevant and material hereto, the CHURCH's duties encompassed using reasonable care in the retention, supervision, and hiring of PERPETRATOR and the duty to otherwise provide a safe environment for Plaintiff.

23.     At all times relevant and material hereto, the CHURCH's duties encompassed the protection and supervision of Plaintiff, and otherwise providing a safe environment for Plaintiff while on CHURCH and SCHOOL premises.

24.     At all times relevant and material hereto, the CHURCH had a duty to exercise reasonable care in the training of teachers, clergy, employees, administration, and staff in the prevention of sexual abuse and protection of the safety of students and children in its care.

**Defendant SCHOOL**

25.     At all times relevant and material hereto, the DIOCESE OF ROCKVILLE CENTRE, as principal, and SCHOOL, as agent, were in an agency relationship, such that SCHOOL acted on the DIOCESE OF ROCKVILLE CENTRE's behalf, in accordance with the DIOCESE OF ROCKVILLE CENTRE's instructions and directions on all matters, including those relating to the hiring, retention and supervision of personnel. The acts and omissions of SCHOOL were subject to the DIOCESE OF ROCKVILLE CENTRE's plenary control, and SCHOOL consented to act subject to the DIOCESE OF ROCKVILLE CENTRE's control.

26.     At all times relevant and material hereto, the SCHOOL and Plaintiff were in a special relationship of parochial school – student, in which the SCHOOL owed Plaintiff a duty of reasonable care to prevent foreseeable harm.

5

27.     At all times relevant and material hereto, the SCHOOL had a duty to act as a reasonably prudent parent would to protect Plaintiff from foreseeable harms on SCHOOL grounds and during school-related activities. In this regard, the SCHOOL was in loco parentis with parochial school students, including Plaintiff.

28.     At all times relevant and material hereto, the SCHOOL and PERPETRATOR were in a special relationship of employer-employee, in which the SCHOOL owed a duty to control the acts and conduct of PERPETRATOR to prevent foreseeable harm.

29.     At all times relevant and material hereto, the SCHOOL had a duty to exercise reasonable care in the training of teachers, clergy, employees, and staff in the prevention of sexual abuse and protection of the safety of students and children in its care.

30.     At all times relevant and material hereto, the SCHOOL had a duty to establish and implement policies and procedures in the exercise of reasonable care for the prevention of sexual abuse and protection of the safety of the parochial students and children in its care.

31.     At all times relevant and material hereto, the SCHOOL had a duty to warn parishioners of dangers presented to children on school grounds and in engaging in school-related activities, including the dangers of sexual abuse.

32.     At all times relevant and material hereto, the SCHOOL owed a duty to Plaintiff to use reasonable care to protect the safety, care, well-being, and health of Plaintiff while Plaintiff was under the care and custody, and/or in the presence of the SCHOOL.

33.     At all times relevant and material hereto, the SCHOOL's duties encompassed using reasonable care in the retention, supervision, and hiring of PERPETRATOR and the duty to otherwise provide a safe environment for Plaintiff.

34.     At all times relevant and material hereto, the SCHOOL's duties encompassed the protection and supervision of Plaintiff, and otherwise providing a safe environment for Plaintiff while on SCHOOL premises.

35.     At all times relevant and material hereto, the SCHOOL had a duty to exercise reasonable care in the training of teachers, clergy, employees, administration, and staff in the prevention of sexual abuse and protection of the safety of students and children in its care.

### Defendants ORDERS

36.     At all times relevant and material hereto, the DIOCESE OF ROCKVILLE CENTRE, as principal, and ORDERS, as agent, were in an agency relationship, such that ORDERS acted on the DIOCESE OF ROCKVILLE CENTRE's behalf, in accordance with the DIOCESE OF ROCKVILLE CENTRE's instructions and directions on all matters, including those relating to the hiring, retention and supervision of personnel. The acts and omissions of ORDERS were subject to the DIOCESE OF ROCKVILLE CENTRE's plenary control, and ORDERS consented to act subject to the DIOCESE OF ROCKVILLE CENTRE's control.

37.     At all times relevant and material hereto, the ORDERS, as principal, and CHURCH, as agent, were in an agency relationship, such that CHURCH acted on the ORDERS' behalf, in accordance with the ORDERS' instructions and directions on all matters, including those relating to the hiring, retention and supervision of personnel. The acts and omissions of CHURCH were subject to the ORDERS' plenary control, and CHURCH consented to act subject to the ORDERS' control.

38.     At all times relevant and material hereto, the ORDERS, as principal, and SCHOOL, as agent, were in an agency relationship, such that SCHOOL acted on the ORDERS' behalf, in accordance with the ORDERS' instructions and directions on all matters, including those relating

Case 2:23-cv-05168   Document 1-2   Filed 07/06/23   Page 10 of 24 PageID #: 18

to the hiring, retention and supervision of personnel. The acts and omissions of SCHOOL were subject to the ORDERS' plenary control, and SCHOOL consented to act subject to the ORDERS' control.

39.     At all times relevant and material hereto, the ORDERS and Plaintiff were in a special relationship of parochial school – student, in which the ORDERS owed Plaintiff a duty of reasonable care to prevent foreseeable harm.

40.     At all times relevant and material hereto, the ORDERS had a duty to act as a reasonably prudent parent would to protect Plaintiff from foreseeable harms on CHURCH and SCHOOL grounds and during church- and school-related activities. In this regard, the ORDERS was in loco parentis with parochial school students, including Plaintiff.

41.     At all times relevant and material hereto, the ORDERS and PERPETRATOR were in a special relationship of employer-employee, in which the ORDERS owed a duty to control the acts and conduct of PERPETRATOR to prevent foreseeable harm.

42.     At all times relevant and material hereto, the ORDERS had a duty to exercise reasonable care in the training of teachers, clergy, employees, and staff in the prevention of sexual abuse and protection of the safety of students and children in its care.

43.     At all times relevant and material hereto, the ORDERS had a duty to establish and implement policies and procedures in the exercise of reasonable care for the prevention of sexual abuse and protection of the safety of the parochial students and children in its care.

44.     At all times relevant and material hereto, the ORDERS had a duty to warn parishioners of dangers presented to children on church and school grounds and in engaging in church- and school-related activities, including the dangers of sexual abuse.

Case 2:23-cv-05168 Document 1-2 Filed 07/06/23 Page 11 of 24 PageID #: 19

45.     At all times relevant and material hereto, the ORDERS owed a duty to Plaintiff to use reasonable care to protect the safety, care, well-being, and health of Plaintiff while Plaintiff was under the care and custody, and/or in the presence of the CHURCH and SCHOOL.

46.     At all times relevant and material hereto, the ORDERS' duties encompassed using reasonable care in the retention, supervision, and hiring of PERPETRATOR and the duty to otherwise provide a safe environment for Plaintiff.

47.     At all times relevant and material hereto, the ORDERS' duties encompassed the protection and supervision of Plaintiff, and otherwise providing a safe environment for Plaintiff while on CHURCH and SCHOOL premises.

48.     At all times relevant and material hereto, the ORDERS had a duty to exercise reasonable care in the training of teachers, clergy, employees, administration, and staff in the prevention of sexual abuse and protection of the safety of students and children in its care.

## BACKGROUND AND FACTS OF SEXUAL ABUSE

49.     At all times relevant and material hereto, Plaintiff was a student at SCHOOL and participated in Defendants' school-related activities and those of its employee-agent clergy.

50.     At all times relevant and material hereto, PERPETRATOR was a clergyman of the FRANCISCAN BROTHERS ORDER assigned to CHURCH and SCHOOL under the authority and control of the ORDER and the DIOCESE OF ROCKVILLE CENTRE.

51.     At all times relevant and material hereto, PERPETRATOR was over eighteen (18) years of age.

52.     In approximately 1970 to 1971 when Plaintiff was approximately twelve (12) or thirteen (13) years old, Plaintiff was sexually abused and assaulted by PERPETRATOR, his teacher at SCHOOL, approximately twice a week for approximately two (2) months. The acts of

INDEX NO. 900212/2021
RECEIVED NYSCEF: 08/04/2021

Case 2:23-cv-05168   Document 1-2   Filed 07/06/23   Page 12 of 24 PageID #: 20

sexual abuse and assault perpetrated against Plaintiff by PERPETRATOR took place on CHURCH premises, including in the rectory.

53. The acts of sexual assault and abuse perpetrated by PERPETRATOR against Plaintiff included conduct which constitutes a sexual offense on a minor as defined in Article 130 of the New York Penal Law or the use of a child in a sexual performance as defined in § 263.05 of the New York Penal Law, including without limitation, conduct constituting rape (consisting of sexual intercourse) (N.Y. Penal Law §§ 130.25 - 130.35); criminal sexual act (consisting of oral or anal sexual conduct) (N.Y. Penal Law §§ 130.40 - 130.53), and/or sexual abuse (consisting of sexual contact) (N.Y. Penal Law §§ 130.55 - 130.77).

## NOTICE – FORESEEABILITY

54. Upon information and belief, PERPETRATOR was at all times relevant and material hereto a sexual predator who sexually abused minor children during his employment by the Defendants.

55. At all times relevant and material hereto, the Defendants knew, or in the exercise of reasonable care should have known, that PERPETRATOR had a propensity for the conduct which caused injury to Plaintiff, particularly that PERPETRATOR had a propensity to engage in the sexual abuse of children.

56. At all times relevant and material hereto, it was reasonably foreseeable to the Defendants that PERPETRATOR would commit acts of child sexual abuse or assault on a child.

57. At all times relevant and material hereto, the Defendants knew or should have known that PERPETRATOR was unfit, dangerous, and a threat to the health, safety and welfare of the children entrusted to PERPETRATOR's counsel, care and/or protection.

10

Case 2:23-cv-05168   Document 1-2   Filed 07/06/23   Page 13 of 24 PageID #: 21

58. With such actual and/or constructive knowledge, the Defendants provided PERPETRATOR unfettered access to Plaintiff and gave PERPETRATOR the opportunity to commit foreseeable acts of child sexual abuse or assault.

### The Diocese's Concealment of Acts of Sexual Abuse by Clergy

59. The Bishop of the DIOCESE OF ROCKVILLE CENTRE, and therefore CHURCH as agent, and the leader of the ORDERS (the "leader") at all relevant times knew that their clergy, under their supervision and control, were grooming and sexually molesting children with whom the clergy would have contact in their ministry and in their educational and pastoral functions.

60. At all relevant times, the Bishop and the Leader knew that this was a widespread, ubiquitous, and systemic problem in the Catholic Church, involving many clergymen and numerous victims.

61. Despite receiving credible allegations of child sexual abuse against clergy, the Bishop and the Leader acted to conceal these allegations in an effort to avoid scandal and accountability.

62. This concealment was in accordance with a policy of the DIOCESE OF ROCKVILLE CENTRE, the CHURCH, and the Leader, as agents, and the Holy See, as principal. In 1922, the Holy See released a confidential document to its Bishops and other officials of Catholic organizations regarding the handling of cases of solicitation of sex in the confessional. This document mandated a specific procedure for Holy See's agents, including the DIOCESE OF ROCKVILLE CENTRE, the CHURCH as agent, and the ORDERS to use when a cleric abused children using the confessional. This document required strict secrecy. The 1922 document showed that the Holy See and its agents were fully aware that there was a systemic problem of clergy sexually molesting children using the confessional.

11

Case 2:23-cv-05168   Document 1-2   Filed 07/06/23   Page 14 of 24 PageID #: 22

63.     In 1962, the Holy See released the confidential document, *Instruction on The Manner of Proceeding in Cases of Solicitation* (The Vatican Press, 1962) (hereinafter referred to as "*Crimen Sollicitationis*"). The heading of the document states, "From the Supreme and Holy Congregation of the Holy Office To All Patriarchs, Archbishops, Bishops and Other Diocesan Ordinaries 'Even of the Oriental Rite,'" and contains specific instructions regarding the handling of child sex abuse by clergy. According to the document itself, it is an "instruction, ordering upon those to whom it pertains to keep and observe it in the minutest detail" (*Crimen Sollicitationis* at paragraph 24).

64.     The 1962 document reinforced that the Holy See and its agents to whom the document was directed had knowledge that there was a systemic problem of Catholic clergy sexually molesting children using the confessional.

65.     At the same time, the Holy See was involved in the formation of secret facilities in the United States where sexually offending clergy would be sent for short periods of time. In 1962-63, Fr. Gerald Fitzgerald reported to the Pope on the problem of abuse of children by clergy and expressed concerns if these clergymen were returned to active duty.

66.     Fr. Fitzgerald's reports were kept secret under the Holy See's standing policy to avoid scandal at all costs. His recommendation was ignored, however, and instead the Holy See made a choice to return known offending clergy to active duty. At this point, it is clear that the Holy See and its agents, including the DIOCESE OF ROCKVILLE CENTRE, the CHURCH as agent, and the ORDERS, knew they had a widespread problem of clergy sexually molesting minors, and they participated in the creation and the operation of facilities in the United States where sexually offending clergy could be sent before they were moved to another parish to work and potentially abuse again.

12

67.     The Holy See's policy of secrecy under penalty of immediate removal from the organization (excommunication) for all involved in an accusation of child sexual abuse created a shroud of secrecy insulating clergy from consequence. Through this policy and others, the Holy See and its agents, including the DIOCESE OF ROCKVILLE CENTRE, and therefore CHURCH as agent, and the ORDERS, knowingly allowed, permitted, and encouraged child sex abuse by their clergy.

68.     The Holy See mandates secrecy for all those involved, including agents and itself, in handling allegations of sexual abuse. Penalties for child sexual abuse include an order to move offending clergymen to other locations once they have been determined to be "delinquent." In response to allegations, the document mandates that supplementary penalties include: "As often as, in the prudent judgment of the Ordinary, it seems necessary for the amendment of the delinquent, for the removal of the near occasion [of soliciting in the future], or for the prevention of scandal or reparation for it, there should be added a prescription for a prohibition of remaining in a certain place" (*Crimen Sollicitations* at paragraph 64). Under this policy of secrecy and transfers or reassignments, all involved are threatened with excommunication and, thus, damnation, if they do not comply.

69.     The policy of secrecy and the severest of penalties for its violation were reiterated in documents issued by officials of the Holy See for the benefit of its agents, including the Bishop of the DIOCESE OF ROCKVILLE CENTRE, the CHURCH as agent, and the Leader of the ORDERS, in 1988 and 2001.

70.     The policies and practices of the DIOCESE OF ROCKVILLE CENTRE, the CHURCH as agent, and the ORDERS designed to conceal sexual abuse by clergy and protect them from scandal and liability included the following:

13

Case 2:23-cv-05168 Document 1-2 Filed 07/06/23 Page 16 of 24 PageID #: 24

a. transfer and reassignment of clergy known or suspected to abuse minors to deflect attention from reports or allegations of child sexual abuse;

b. concealing from parishioners and even other clergy that a clergy reassigned to their parish posed a danger of sexual abuse to children;

c. failing to alert parishioners from the clergymen's prior assignments or his experience in seminary that their children were exposed to a known or suspected child molester;

d. failing to report sexual abuse to criminal authorities; and

e. otherwise protecting and fostering the interests of abusive clergy to the detriment of the victims and the community, for the purpose of avoiding scandal and public scrutiny.

71. Upon information and belief, the DIOCESE OF ROCKVILLE CENTRE's and the ORDERS' transfers and reassignments of accused clergy were pursuant to this policy and practice designed to conceal sexual abuse of clergy and protect themselves from scandal.

72. Indeed, the policy of secrecy and lack of consequences for the sexual abuse of children was perceived as a perquisite by clergy sex abusers. The Holy See, the DIOCESE OF ROCKVILLE CENTRE, the CHURCH as agent, and the ORDERS believed it to be perceived as a perquisite, which it condoned and used to their advantage in controlling clergymen.

73. Plaintiff was in a zone of foreseeable harm as a child engaged in Catholic activities in close proximity to or with Catholic clergy.

74. The DIOCESE OF ROCKVILLE CENTRE, the CHURCH as agent, and the ORDERS were in the best position to protect against the risk of harm as they knew of the systemic problem and foreseeable proclivities of their clergymen to sexually abuse children.

14

75.     At all relevant times, while the DIOCESE OF ROCKVILLE CENTRE, the CHURCH as agent, and the ORDERS had special and unique knowledge of the risk of child sexual abuse by its clergymen, such clergymen who would prey on children were outside the reasonable contemplation of the Catholic community and families who trusted clergy to have access to their children.

76.     Plaintiff and those similarly situated had no opportunity to protect themselves against a danger that was solely within the knowledge of the DIOCESE OF ROCKVILLE CENTRE and the ORDERS.

77.     The DIOCESE OF ROCKVILLE CENTRE, the CHURCH as agent, and ORDERS knew a significant percentage of clergymen were using their status and position to identify, recruit, groom and sexually assault vulnerable children in the Church.

78.     Children engaging in Catholic activities were in this manner placed at risk of child sexual abuse. Because the DIOCESE OF ROCKVILLE CENTRE, the CHURCH as agent, and the ORDERS maintained child sexual abuse by clergy in strict secrecy, parishioners, including Plaintiff's parents and/or guardians, were misled to believe that their clergy were safe around children.

79.     As a result of the foregoing secrecy and deceit, Plaintiff's parents/guardians trusted the Defendants, and continued Plaintiff's involvement with church- and school-related activities.

## BREACH

80.     Upon information and belief, at the time Plaintiff was first sexually assaulted by PERPETRATOR and during the time that these sexual assaults continued, the Defendants knew or should have known that PERPETRATOR posed a foreseeable risk of sexual assault to students

Case 2:23-cv-05168   Document 1-2   Filed 07/06/23   Page 18 of 24 PageID #: 26

and children with whom PERPETRATOR would have contacts in his duties and activities as a Catholic clergyman.

81.     At all times relevant and material hereto, the Defendants failed to warn Plaintiff and similarly situated individuals, and their parents and/or guardians, that PERPETRATOR posed a risk of child sexual abuse.

82.     Given Defendants' constructive and/or actual knowledge of PERPETRATOR's dangerous sexual propensities, as described above, Defendants breached their duty to protect Plaintiff by allowing PERPETRATOR to serve as clergy and granting him unfettered access to students and children engaged in church- and school-related activity despite such knowledge of his dangerous sexual propensities, and by failing to institute any supervision of PERPETRATOR's contacts with students and children, and failing to address and/or correct PERPETRATOR's known inappropriate contacts with students and children.

83.     As a direct and proximate result of the Defendants' breach of their duties, Plaintiff was sexually assaulted and abused by PERPETRATOR while Plaintiff was a student at SCHOOL.

84.     At all times relevant and material hereto, the Defendants breached their duties by (i) failing to protect Plaintiff from sexual assault and lewd and lascivious acts committed by their agent and employee; (ii) failing to establish policies and procedures that were adequate to protect the health, safety and welfare of students and children within the parish and protect them from sexual abuse; (iii) failing to implement and enforce policies and procedures that were adequate to protect the health, safety, and welfare of children within the parish and protect them from sexual abuse; (iv) hiring, retaining, and/or failing to supervise PERPETRATOR when they knew or should have known that he posed a substantial risk of harm to students and children; (v) failing to adequately monitor and supervise students and children at CHURCH and SCHOOL and within

16

Case 2:23-cv-05168 Document 1-2 Filed 07/06/23 Page 19 of 24 PageID #: 27

the DIOCESE OF ROCKVILLE CENTRE and the ORDERS; (vi) failing to warn students and children within the parish and their parents of the danger of sexual abuse posed by PERPETRATOR; (vii) hiring and retaining PERPETRATOR as clergy with unfettered access to students and children: (viii) failing to adequately supervise PERPETRATOR as an active clergyman of the FRANCISCAN BROTHERS ORDER and DIOCESE OF ROCKVILLE CENTRE; and (ix) granting and maintaining PERPETRATOR faculties or authorization to act as clergy without making any warning or notice of his perverse sexual proclivities to the Catholic faithful who would have contacts with PERPETRATOR.

85.     At all times relevant and material hereto, the Defendants concealed their knowledge that clergy, specifically PERPETRATOR, were unsafe.

86.     At all times relevant and material hereto, Defendants failed to train teachers, clergy, employees, administrators, and staff in the prevention of child sexual abuse.

87.     At all times relevant and material hereto, Defendants failed to warn Catholic families that their students and children were at risk of sexual abuse by clergy in general and PERPETRATOR in particular.

88.     As a direct and proximate cause of the foregoing breaches of duty, PERPETRATOR sexually assaulted Plaintiff while Plaintiff was a student at SCHOOL.

89.     The limitation of liability set forth in CPLR Art. 16 is not applicable to the claim of personal injury alleged herein, by reason of one or more of the exemptions provided in CPLR § 1602, including without limitation, that Defendants acted with reckless disregard for the safety of others, including Plaintiff, or knowingly or intentionally, in concert with PERPETRATOR to retain PERPETRATOR in ministry with unfettered access to children.

17

## COUNT I – NEGLIGENCE
### (against Defendant CHURCH)

90.     Plaintiff repeats and realleges Paragraphs 1 through 89 above.

91.     Defendant CHURCH was negligent.

92.     Defendant CHURCH owed a duty of care to Plaintiff.

93.     Defendant CHURCH breached the duty of care owed to Plaintiff.  Defendant CHURCH, having actual or constructive notice of child sexual abuse perpetrated by its agents, including PERPETRATOR, failed to protect Plaintiff, failed to control PERPETRATOR, and otherwise failed to make its parochial school safe.

94.     Defendant CHURCH knew or should have known that Plaintiff was being sexually abused and failed to take corrective action against the perpetrators of the sexual abuse, namely PERPETRATOR, or otherwise make its environment safe for Plaintiff.  Plaintiff was sexually abused after Defendant CHURCH knew or should have known that Plaintiff was being sexually abused.

95.     It was reasonably foreseeable to Defendant CHURCH that in allowing clergy unsupervised and unfettered access to students and children that those students and children may be sexually abused.

96.     Defendant CHURCH was negligent in the hiring, supervision, placement, training, and retention of PERPETRATOR.

97.     As a direct and proximate result of Defendant CHURCH's negligence, Plaintiff has suffered and continues to suffer severe and permanent psychological, emotional, and physical injuries, shame, humiliation, and the inability to lead a normal life.

## COUNT II – NEGLIGENCE
### (against Defendant SCHOOL)

98.     Plaintiff repeats and realleges Paragraphs 1 through 89 above.

18

99.     Defendant SCHOOL was negligent.

100.    Defendant SCHOOL owed a duty of care to Plaintiff.

101.    Defendant SCHOOL breached the duty of care owed to Plaintiff. Defendant SCHOOL, having actual or constructive notice of child sexual abuse perpetrated by its agents, including PERPETRATOR, failed to protect Plaintiff, failed to control PERPETRATOR, and otherwise failed to make its parochial school safe.

102.    Defendant SCHOOL knew or should have known that Plaintiff was being sexually abused and failed to take corrective action against the perpetrators of the sexual abuse, namely PERPETRATOR, or otherwise make its environment safe for Plaintiff. Plaintiff was sexually abused after Defendant SCHOOL knew or should have known that Plaintiff was being sexually abused.

103.    It was reasonably foreseeable to Defendant SCHOOL that in allowing clergy unsupervised and unfettered access to students and children that those students and children may be sexually abused.

104.    Defendant SCHOOL was negligent in the hiring, supervision, placement, training, and retention of PERPETRATOR.

105.    As a direct and proximate result of Defendant SCHOOL's negligence, Plaintiff has suffered and continues to suffer severe and permanent psychological, emotional, and physical injuries, shame, humiliation, and the inability to lead a normal life.

## COUNT III – NEGLIGENCE

### (against Defendant FRANCISCAN BROTHERS ORDER)

106.    Plaintiff repeats and realleges Paragraphs 1 through 89 above.

107.    Defendant FRANCISCAN BROTHERS ORDER was negligent.

108.    Defendant FRANCISCAN BROTHERS ORDER owed a duty of care to Plaintiff.

109.    Defendant FRANCISCAN BROTHERS ORDER breached the duty of care owed to Plaintiff.  Defendant FRANCISCAN BROTHERS ORDER, having actual or constructive notice of child sexual abuse perpetrated by its agents, including PERPETRATOR, failed to protect Plaintiff, failed to control PERPETRATOR, and otherwise failed to make its parochial school safe.

110.    Defendant FRANCISCAN BROTHERS ORDER knew or should have known that Plaintiff was being sexually abused and failed to take corrective action against the perpetrators of the sexual abuse, namely PERPETRATOR, or otherwise make its environment safe for Plaintiff. Plaintiff was sexually abused after Defendant FRANCISCAN BROTHERS ORDER knew or should have known that Plaintiff was being sexually abused.

111.    It was reasonably foreseeable to Defendant FRANCISCAN BROTHERS ORDER that in allowing clergy unsupervised and unfettered access to students and children that those students and children may be sexually abused.

112.    Defendant FRANCISCAN BROTHERS ORDER was negligent in the hiring, supervision, placement, training, and retention of PERPETRATOR.

113.    As a direct and proximate result of Defendant FRANCISCAN BROTHERS ORDER's negligence, Plaintiff has suffered and continues to suffer severe and permanent psychological, emotional, and physical injuries, shame, humiliation, and the inability to lead a normal life.

### COUNT IV – NEGLIGENCE

**(against Defendant SISTERS OF CHARITY ORDER)**

114.    Plaintiff repeats and realleges Paragraphs 1 through 89 above.

115.    Defendant SISTERS OF CHARITY ORDER was negligent.

Case 2:23-cv-05168 Document 1-2 Filed 07/06/23 Page 23 of 24 PageID #: 31

116.    Defendant SISTERS OF CHARITY ORDER owed a duty of care to Plaintiff.

117.    Defendant SISTERS OF CHARITY ORDER breached the duty of care owed to Plaintiff.  Defendant SISTERS OF CHARITY ORDER, having actual or constructive notice of child sexual abuse perpetrated by its agents, including PERPETRATOR, failed to protect Plaintiff, failed to control PERPETRATOR, and otherwise failed to make its parochial school safe.

118.    Defendant SISTERS OF CHARITY ORDER knew or should have known that Plaintiff was being sexually abused and failed to take corrective action against the perpetrators of the sexual abuse, namely PERPETRATOR, or otherwise make its environment safe for Plaintiff. Plaintiff was sexually abused after Defendant SISTERS OF CHARITY ORDER knew or should have known that Plaintiff was being sexually abused.

119.    It was reasonably foreseeable to Defendant SISTERS OF CHARITY ORDER that in allowing clergy unsupervised and unfettered access to students and children that those students and children may be sexually abused.

120.    Defendant SISTERS OF CHARITY ORDER was negligent in the hiring, supervision, placement, training, and retention of PERPETRATOR.

121.    As a direct and proximate result of Defendant SISTERS OF CHARITY ORDER's negligence, Plaintiff has suffered and continues to suffer severe and permanent psychological, emotional, and physical injuries, shame, humiliation, and the inability to lead a normal life.

## DEMAND FOR A JURY TRIAL

122.    Plaintiff demands a Jury Trial in this action.

WHEREFORE, the amount in controversy exceeds the jurisdictional limits of all lower courts, and Plaintiff demands judgment against Defendants jointly and severally for compensatory

Case 2:23-cv-05168 Document 1-2 Filed 07/06/23 Page 24 of 24 PageID #: 32

damages, pain and suffering, punitive damages, attorney fees, the costs and disbursements of this

action, and such other and further relief as this Court deems necessary just and proper.

Dated: New York, NY
August 4, 2021

Respectfully submitted,

HERMAN LAW
434 W. 33rd St., Penthouse
New York, NY 10001
Tel: (212) 390-0100

By:   _Jeffrey Herman_
Jeff Herman, Esq.
jherman@hermanlaw.com
Jason Sandler, Esq.
jsandler@hermanlaw.com

22